# STATE OF MICHIGAN

# COURT OF APPEALS

MARGARET A. BACON,

       Plaintiff-Appellant,

v

STATE OF MICHIGAN and DEPARTMENT OF
ENVIRONMENTAL QUALITY,

       Defendants-Appellees.

UNPUBLISHED
August 16, 2018

No. 339009
Court of Claims
LC No. 16-000312-MM

Before: MURPHY, P.J., and GLEICHER and LETICA, JJ.

PER CURIAM.

Plaintiff appeals as of right an order of the Court of Claims granting summary disposition to defendants, State of Michigan and the Department of Environmental Quality (DEQ), under MCR 2.116(C)(4) (lack of subject matter jurisdiction) and MCR 2.116(C)(7) (governmental immunity), on the basis that plaintiff did not provide timely notice to defendants under the Court of Claims Act, MCL 600.6401 *et seq*. We reverse and remand for further proceedings.

Plaintiff suffered injuries after contracting Legionella pneumonia during the Flint water crisis. Plaintiff was hospitalized on September 12, 2014. She filed a notice of injury on June 1, 2016, and a complaint on December 20, 2016. In both her notice and complaint, plaintiff alleged that acts and omissions of defendants led to public dissemination of contaminated Flint River water, which she alleged that defendants fraudulently concealed.

In a pre-answer motion for summary disposition, defendants argued that plaintiff had not timely filed her notice or complaint. Plaintiff argued that her claims did not accrue until January 2016, when Governor Rick Snyder first disclosed to the public that there was a potential connection between the contaminated water and Legionella pneumonia. The Court of Claims concluded that plaintiff's claims accrued no later than the date of her hospitalization and that MCL 600.6431(3) barred her claims.

## I. STANDARD OF REVIEW

We review de novo a lower court decision on a motion for summary disposition. *Moraccini v Sterling Hts*, 296 Mich App 387, 391; 822 NW2d 799 (2012). In deciding a motion for summary disposition under MCR 2.116(C)(4) or (7), the trial court must consider any affidavits, pleadings, depositions, admissions, and documentary evidence in the action or

-1-

submitted by the parties. MCR 2.116(G)(5). A party may move for summary disposition under MCR 2.116(C)(4) if "[t]he court lacks jurisdiction of the subject matter." When evaluating a claim under MCR 2.116(C)(4), this Court reviews de novo the trial court's decision "to determine if the moving party was entitled to judgment as a matter of law, or if affidavits or other proofs demonstrate there is an issue of material fact." *Harris v Vernier*, 242 Mich App 306, 309; 617 NW2d 764 (2000). Summary disposition under MCR 2.116(C)(7) should be granted when governmental immunity bars a claim. *Moraccini*, 296 Mich App at 391. When evaluating a claim under MCR 2.116(C)(7), the facts as alleged in the complaint "must be accepted as true unless contradicted" by the submitted evidence, and the court evaluates all evidence "in a light most favorable to the nonmoving party." *Id*.

To the extent that resolution of the issues before us requires statutory interpretation, we are guided by well-recognized principles. In ascertaining legislative intent, courts may not speculate beyond the words of the statute as written but are limited to the "manifest intent" of the words themselves. *Omne Fin, Inc v Shacks, Inc*, 460 Mich 305, 311-312; 596 NW2d 591 (1999). However, when the Legislature's intent is not clear from the plain language, "courts must interpret statutes in a way that gives effect to every word, phrase, and clause in a statute and avoid an interpretation that would render any part of the statute surplusage or nugatory." *Haynes v Village of Beulah*, 308 Mich App 465, 468; 865 NW2d 923 (2014) (quotation marks and citation omitted).

## II. STATUTORY NOTICE REQUIREMENT AND CLAIM ACCRUAL

First, plaintiff argues that she satisfied the requirement of MCL 600.6431(3) because she filed her notice of intent within six months of when she discovered that she had claims against the state. We disagree that plaintiff's notice of her personal injury was filed within the required six-month period, but conclude that questions of fact exists as to whether plaintiff's notice was timely with respect to her inverse condemnation claim and whether defendants fraudulently concealed the existence of plaintiff's personal injury claim.

In Michigan, governmental agencies are immune from tort liability unless the government voluntarily subjects itself to such liability. *McCahan v Brennan*, 492 Mich 730, 736; 822 NW2d 747 (2012). If the government chooses to subject itself to liability, it may "place conditions or limitations on the liability imposed." *Id*. One limitation on filing a claim against the state is found in MCL 600.6431, which provides in part:

> (1) No claim may be maintained against the state unless the claimant, within 1 year after such claim has accrued, files in the office of the clerk of the court of claims either a written claim or a written notice of intention to file a claim against the state or any of its departments, commissions, boards, institutions, arms or agencies, stating the time when and the place where such claim arose and in detail the nature of the same and of the items of damage alleged or claimed to have been sustained, which claim or notice shall be signed and verified by the claimant before an officer authorized to administer oaths.

* * *

-2-

(3) In all actions for property damage or personal injuries, claimant shall file with the clerk of the court of claims a notice of intention to file a claim or the claim itself within 6 months following the happening of the event giving rise to the cause of action.

It is undisputed that plaintiff's claims concern property damage and personal injury. Therefore, the six-month notice period in MCL 600.6431(3) applies.

In Michigan, "the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results." *Trentadue v Buckler Automatic Lawn Sprinkler Co*, 479 Mich 378, 388; 738 NW2d 664 (2007), quoting MCL 600.5827 (quotation marks omitted). In contrast, "[u]nder a discovery-based analysis, a claim does not accrue until a plaintiff knows, or objectively should know, that he has a cause of action and can allege it in a proper complaint." *Id*. at 389. Unless a statutory scheme provides for a tolling provision on the basis of discovery, no discovery rule applies. *Id*. MCL 600.6431 provides no tolling period on the basis of discovery. Accordingly, this Court may not apply a discovery rule, and plaintiff's claims accrued when the wrong was done.

According to plaintiff, this Court's recent decision in *Mays v Snyder*, 323 Mich App 1; ___ NW2d ___ (2018), is dispositive in her favor. We disagree. *Mays* involved a putative class action brought by water users and property owners in the City of Flint, also arising from the Flint water crisis. *Id*. at 19. Among other counts, the plaintiffs' complaint raised causes of action for violation of their due-process right to bodily integrity and inverse condemnation. *Id*. at 23. Like in this case, the defendants in *Mays* sought an early dismissal of the plaintiffs' claims on the basis of the plaintiffs' failure to comply with the six-month notice requirement of MCL 600.6431(3). *Id*. In considering when the plaintiffs' claims accrued for purposes of providing the required notice, the majority opinion in *Mays* explained:

[O]ur Legislature has stated that a claim accrues "at the time the wrong upon which the claim is based was done," MCL 600.5827, and our Supreme Court has clarified that "the 'wrong' . . . is the date on which the defendant's breach harmed the plaintiff, as opposed to the date on which defendant breached his duty," *Frank v Linkner*, 500 Mich 133, 147; 894 NW2d 574 (2017) (quotation marks and citation omitted). Therefore, the date on which defendants acted to switch the water is not necessarily the date on which plaintiffs suffered the harm giving rise to their causes of action. Although our Supreme Court has abrogated the application of the discovery doctrine in this state, it has also made clear that it is not until "all of the elements of an action for . . . injury, including the element of damage, are present, [that] the claim accrues and the statute of limitations begins to run." *Marilyn Froling Revocable Living Trust v Bloomfield Hills Country Club*, 283 Mich App 264, 290; 769 NW2d 234 (2009), quoting *Connelly v Paul Ruddy's Equip Repair & Serv Co*, 388 Mich 146, 151; 200 NW2d 70 (1972) (quotation marks omitted). In other words, while a claimant's knowledge of each element of a cause of action is not necessary for claim accrual, a claim does not accrue until each element of the cause of action, including some form of damages, *exists*. See *Henry v Dow Chem Co*, 319 Mich App 704, 720; 905 NW2d 422 (2017) [(*Henry I*)], rev'd in part on other grounds 905 NW2d 601 (2017).

> Determination of the time at which plaintiffs' claims accrued therefore requires a determination of the time at which plaintiffs were first harmed. See *id*. [*Mays*, 323 Mich App at 28-29 (footnote omitted; second alteration in original).]

Based on these principles, the Court found that summary disposition would have been premature in *Mays* because the plaintiffs "allege[d] various affirmative actions taken by defendants . . . that resulted in distinct harm to plaintiffs," and "questions of fact remain[ed] regarding whether and when each plaintiff suffered injury and when each plaintiff's claims accrued relative to the filing of plaintiffs' complaint." *Id*. at 29.

The more precise bodily-integrity claim raised by plaintiff in this case distinguishes the matter from the circumstances presented in *Mays*. Unlike the generalized claims presented by the putative class plaintiffs in *Mays*, plaintiff's complaint asserted a specific injury: the Legionella pneumonia she contracted on or about September 12, 2014.[1] Accepting plaintiff's allegations regarding the timing of her illness as true, the alleged wrongdoing—defendants' dissemination of contaminated water from the Flint River—caused plaintiff harm not later than September 12, 2014, and her claim therefore accrued by that date. See *Frank*, 500 Mich at 147; *Mays*, 323 Mich App at 29. As such, plaintiff was required to file her complaint within six months of September 12, 2014, and the Court of Claims correctly found that plaintiff's June 1, 2016 notice of intent was untimely under MCL 600.6431(3).

The point at which plaintiff's inverse condemnation claim accrued presents a closer question. We recognize that the *Mays* Court considered a nearly identical claim from the class plaintiffs and reasoned that the plaintiffs' "claim for lack of marketability did not accrue until the values of their homes decreased, which would have occurred when the water crisis became public and marketability of property in Flint became significantly impaired in October 2015." See *Mays*, 323 Mich App at 23, 29. However, though we are precedentially bound by published opinions of this Court, MCR 7.215(C)(2), we are also obliged to follow the decisions of the Michigan Supreme Court until such time as the Supreme Court chooses to overrule or otherwise modify its own precedent, see *Paige v Sterling Hts*, 476 Mich 495, 524; 720 NW2d 219 (2006). While we agree that the *Mays* Court's articulation of the controlling principles was accurate, we question whether those principles were correctly applied in the context of the plaintiffs' inverse condemnation claim. Nonetheless, we reach the same result as the *Mays* Court with respect to this issue, albeit for a different reason.

Importantly, in an order[2] entered just before the release of this Court's opinion in *Mays*, the Supreme Court reversed another opinion of the Court of Appeals that relied on substantially similar reasoning concerning claim accrual. *Henry v Dow Chem Co*, 501 Mich 965 (2018)

---

[1] Plaintiff's complaint also identified additional injuries and damages, all of which appear to stem from the Legionella pneumonia and its required treatment.

[2] Orders of the Supreme Court are considered binding precedent if the order includes understandable rationale. *People v Giovannini*, 271 Mich App 409, 414; 722 NW2d 237 (2006); *Evans & Luptak, PLC v Lizza*, 251 Mich App 187, 196; 650 NW2d 364 (2002).

(*Henry II*). In *Henry I*, 319 Mich App at 709, the plaintiffs claimed a "loss of the free use and enjoyment of their property, as well as damages in the form of decreased property value, as a result of dioxin contamination recently discovered in the flood plain soil and connected to defendant's [manufacturing operation] activities." The defendant argued that the plaintiffs' claims were barred by the applicable three-year statute of limitations because the claims accrued in 1984, when the public was first made aware that the Tittabawassee River was contaminated with dioxin. *Id*. at 717. The plaintiffs, on the other hand, argued that the claim did not accrue until 2002, when the DEQ began releasing bulletins warning the public about the possibility of dioxins in the flood plain soil. *Id*. at 716.

Like the *Mays* Court, the Court of Appeals in *Henry I* recognized that "the wrong is done and the claim accrues when the plaintiff is *harmed* rather than when the defendant acted," *id*. at 718, and that "the period of limitations begins to run when a plaintiff suffers harm, not when a plaintiff first learns of the harm," *id*. at 719. The Court then concluded that the 2002 bulletins "marked the creation of the damages element necessary for plaintiffs' nuisance and negligence claims." *Id*. The Court continued, "Plaintiffs' damages, including the loss of the use and enjoyment of their property and depreciation of their property values, arose from the harm of dioxins in their soil reaching potentially toxic levels but did not exist in any tangible form until the []DEQ published its 2002 notice." *Id*. at 719-720. Reasoning that the limitations period did not begin to run until every element of the claim, including damages, was present, the Court affirmed the trial court's denial of the defendant's summary disposition motion. *Id*. at 720.

As already noted, the Supreme Court has since reversed the portion of the Court of Appeals' opinion in *Henry I* dealing with the statute of limitations, adopting the reasoning presented in the dissenting opinion authored by Judge GADOLA. *Henry II*, 501 Mich at 965. In particular, the Supreme Court stated,

> The wrong is done when the plaintiff is harmed. [*Trentadue*, 479 Mich] at 388. As explained by dissenting Judge Gadola, the claimed harm to the plaintiffs in this case is the presence of dioxin in the soil of their properties. The period of limitations began to run from the date that this "wrong" occurred. The circuit court must therefore determine the accrual date of the plaintiffs' claims based on the occurrence of the wrong — the presence of dioxin on the plaintiffs' properties. [*Henry II*, 501 Mich at 965.]

In light of the Supreme Court's guidance on this issue in *Henry II*, we feel compelled to conclude that plaintiff's inverse condemnation claim in the instant case accrued at the time that corrosive and contaminated water caused harm to her property. To the extent that plaintiff also seeks damages for diminished property value, the increased scope of damages arising from the harm to plaintiff's property does not alter the date on which her claim accrued. See *Henry I*, 319 Mich App at 735 (GADOLA, J., dissenting). See also *Marilyn Froling Revocable Living Trust*, 283 Mich App at 290 ("Later damages may result, but they give rise to no new cause of action, nor does the statute of limitations begin to run anew as each item of damage is incurred.") (quotation marks and citation omitted).

Turning to the record before the Court of Claims at the time of its ruling,[3] plaintiff alleged that "the introduction of corrosive and contaminated water into [her] personal water system" caused permanent damage to her property which, in turn, limited her use and enjoyment of the property and decreased the value of the property. An action for inverse condemnation may arise from "[a]ny injury to the property of an individual which deprives the owner of the ordinary use of it . . . ." *Peterman v Dep't of Natural Resources*, 446 Mich 177, 190; 521 NW2d 499 (1994) (quotation marks and citation omitted; alteration in original). Although we can infer that the damage to plaintiff's property occurred at some point after the city of Flint began disseminating water from the Flint River on or about April 25, 2014, the record is otherwise silent as to when exposure to the river water caused actionable damage to plaintiff's property.[4] Accordingly, a question of fact exists as to when plaintiff's inverse condemnation claim accrued and the Court of Claims erred by finding that defendants were entitled to judgment as a matter of law with respect to that claim.

### III. HARSH AND UNREASONABLE CONSEQUENCES DOCTRINE

Plaintiff also relies on *Mays* to support her argument that strict compliance with the statutory notice provision should be waived. We disagree.

In *Rusha v Dep't of Corrections*, 307 Mich App 300, 311; 859 NW2d 735 (2014), this Court observed that enforcement of a limitations period may be excused when "it can be demonstrated that [statutes of limitations] are so harsh and unreasonable in their consequences that they effectively divest plaintiffs of the access to the courts intended by the grant of the substantive right." (Quotation marks and citation omitted; alteration in original). The *Rusha* Court then reasoned that the same exception should apply with equal force to statutory notice requirements, though it ultimately declined to apply the exception in that case. *Id*. at 311-313. In *Mays*, the Court agreed with *Rusha*'s characterization of the harsh-and-unreasonable-consequences exception, and clarified that "*Rusha* should not be read as advocating for the creation of a judicial saving construction to supplement an otherwise valid statute." *Mays*, 323

---

[3] We previously granted plaintiff's request to expand the record to include various articles addressing the Flint water crisis. *Bacon v State of Michigan*, unpublished order of the Court of Appeals, entered July 20, 2018 (Docket No. 339009). However, having reviewed the supplemental evidence, we do not consider it relevant to disposition of the issues on appeal.

[4] We note that Judge GADOLA's dissent in *Henry I* agreed with the majority's conclusion that the plaintiffs' " 'claims accrued and the period of limitations began to run when plaintiffs first suffered the harm of toxic levels of dioxin present in their soil.' " *Henry I*, 319 Mich App at 735 (GADOLA, J., dissenting). This reference to the toxic level of contamination, rather than the presence of *any* dioxin in the soil, is consistent with the requirement that "all elements of an action for . . . injury, *including the element of damages*," must be present before the claim accrues. *Marilyn Froling Revocable Living Trust*, 283 Mich App at 290 (quotation marks and citation omitted; emphasis added). Accordingly, it is not the mere presence of the contaminated water that is relevant to determining when plaintiff's claim accrued, but rather the time when the water caused a discrete injury to plaintiff's property.

Mich App at 32. "Rather, it seems that the *Rusha* Court properly recognized the longstanding principle that while the Legislature retains the authority to impose *reasonable* procedural restrictions on a claimant's pursuit of claims under self-executing constitutional provisions, 'the right guaranteed shall not be curtailed or any undue burden placed thereon.' " *Id.*, quoting *Rusha*, 307 Mich App at 308.

With that understanding in mind, the *Mays* Court found application of the exception warranted. *Mays*, 323 Mich App at 35. The Court reasoned:

> To grant defendants' motions for summary disposition at this early stage in the proceedings would deprive plaintiffs of access to the courts and effectively divest them of the ability to vindicate the constitutional violations alleged. As the Court of Claims observed, this is not a case in which an ostensible, single event or accident has given rise to a cause of action, but one in which the "event giving rise to the cause of action was not readily apparent at the time of its happening." "Similarly, a significant portion of the injuries alleged to persons and property likely became manifest so gradually as to have been well established before becoming apparent to plaintiffs because the evidence of injury was concealed in the water supply infrastructure buried beneath Flint and in the bloodstreams of those drinking the water supplied via that infrastructure." Plaintiffs in this case did not wait more than two years after discovering their claims to file suit. Rather, they filed suit within six months of the state's public acknowledgment and disclosure of the toxic nature of the Flint River water to which plaintiffs were exposed. [*Id.* at 35-36 (citations omitted).]

Again, we find the circumstances at issue in the instant case distinguishable. Here, plaintiff's hospitalization with Legionella pneumonia on or about September 12, 2014, is a single, discrete event that triggered the statutory notice period. Although plaintiff may not have been fully aware that her illness might be attributable to exposure to the Flint River water, she was certainly aware that she had been injured and that further investigation into the cause may have been warranted. Accordingly, application of the harsh-and-unreasonable-consequences exception is not called for under these circumstances.

## IV. FRAUDULENT CONCEALMENT

Lastly, plaintiff argues that the Court of Claims erred by granting summary disposition because there is a question of fact regarding whether the fraudulent-concealment exception applies to toll the statutory notice period. We agree.

The Legislature has created a statutory exception to limitation periods in cases in which the defendant fraudulently concealed the existence of the claim:

> If a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on the claim, the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the

-7-

identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations. [MCL 600.5855.]

The *Mays* Court held that the fraudulent-concealment exception tolls a statutory notice period in the same manner, regardless of when a plaintiff's claim actually accrued, if the defendant "actively concealed the information necessary to support plaintiffs' causes of action so that plaintiffs could not, or should not, have known of the existence of the causes of action" in a timely manner. *Mays*, 323 Mich App at 45.

In this case, plaintiff alleged in her complaint that defendants "engaged in coordinated efforts to cover up the health crisis resulting from the use of the Flint River as the public water supply for the City of Flint." Defendants did not file an answer and, in moving for summary disposition, addressed the issue of fraudulent concealment only by denying that a fraudulent concealment rule applied to the notice provisions of MCL 600.6431. That is, defendants did not present evidence, or even contest, plaintiff's allegations that they actively concealed the information that was necessary to support plaintiff's claims. Therefore, plaintiff's complaint must be accepted as true on the issue of fraudulent concealment because it is not contradicted by submitted evidence. See *Moraccini*, 296 Mich App at 391. Accordingly, the Court of Claims was required to accept as true plaintiff's assertions that defendants "engaged in coordinated efforts to cover up the health crisis," and that the link between plaintiff's illness and the contaminated water was not disclosed until January 2016. Defendants have not yet disputed whether there was fraudulent concealment that would operate to toll plaintiff's compliance with MCL 600.6431(3). Therefore, we conclude that dismissal of plaintiff's claims was premature, and this case must be remanded for further discovery on the question of whether defendants fraudulently concealed the connection between the contaminated water and plaintiff's injuries. See *Mays*, 323 Mich App at 45.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ William B. Murphy
/s/ Elizabeth L. Gleicher
/s/ Anica Letica

-8-